*Tagged opinion*
*Do not publish*



**ORDERED in the Southern District of Florida on March 28, 2025.**

Laurel M. Isicoff, Judge
United States Bankruptcy Court

___

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| In re: | CASE NO.: 24-16890-LMI |
| JUAN PABLO HERNANDEZ BOHORQUEZ, | Chapter 13 |
| Debtor. | |
| _____/ | |

### ORDER SUSTAINING OBJECTION TO CLAIM OF BABIECA CAPITAL, L.P.

This matter came before the Court on February 13, 2025 at 9:30 a.m. for an evidentiary hearing (the "Trial") on the *Objection to Claim of Babieca Capital, L.P.* (ECF #42) (the "Objection to Claim") filed by the Debtor, Juan Pablo Hernandez Bohorquez (the "Debtor"). The Objection to Claim objects to the proof of claim (the "Claim") filed by the creditor, Babieca Capital, LP ("Babieca" or the

"Creditor"), in the amount of $7.5 million. The Claim is based on claims of replevin, aiding and abetting conversion, fraudulent transfer, fraudulent inducement and civil conspiracy, all of which were raised in a state court action pending by Babieca against Debtor at the time the bankruptcy case was filed (the "State Court Action").

The Objection to Claim states "[t]his is an unliquidated joint business related debt which requires offset from items held in trust.  Seeks to strike and disallow without distribution from Trustee."  Babieca responded[1] to the Objection to Claim stating that the Debtor was liable to Babieca due to his role as a co-conspirator or aider and abettor of a fraud allegedly perpetrated on Babieca by Mordecai Cohen ("Cohen") and his company, Cohen Anytime, Inc. ("Cohen Anytime") as more fully addressed later in this order.

Babieca's counsel argued that the only matter at issue for Trial was whether the Claim was unliquidated, because that is all the Debtor objected to. The Objection to Claim also stated the Claim was based on a joint business-related debt subject to offset.  Candidly, nothing at Trial remotely addressed either that the $7.5 million Claim was a **joint** business debt or that there was any basis to offset amounts based on anything, let alone items held in a trust[2]. However, both parties put on evidence relating to the Debtor's participation in a settlement more fully described later in this order, and the Debtor's alleged role as a co-conspirator with Cohen.  Thus, the Court finds that what was actually

---

[1] *Opposition Response to Objection to Claim of Babieca Capital L.P.* (ECF #55) (the "Opposition Response").
[2] The Court is at a loss why this was even a basis for the Objection to Claim – perhaps it was left over from another claim objection.

litigated at Trial was whether Babieca has any grounds to assert a claim against the Debtor whether at $7.5 million or otherwise, whether as a business debt or based on fraud or conspiracy, and that is the issue that the Court is ruling on in this order.

Having considered the evidence presented at Trial, including the testimony of witnesses and admitted exhibits,[3] the Court makes the following findings of fact and conclusions of law under Federal Rule of Bankruptcy Procedure 7052 and sustains the Objection to Claim.[4]

A proof of claim is prima facie evidence of its validity so long as it complies with the requirements of Fed. R. Bankr. P. 3001(f). *See In re Taylor*, 363 B.R. 303, 307 (Bankr. M.D. Fla. 2007). The Debtor has the initial burden to go forward with evidence establishing the basis of the objection. *Id.* at 308. If the Debtor succeeds in overcoming the presumption of validity, then the ultimate burden of proving validity of the claim rests on creditor. *Id.* In each instance the burden of proof is preponderance of the evidence. *Id.*

The evidence shows that the Debtor and a man named Miguel Ahumada ("Miguel") entered into a business venture to sell very high-end luxury watches. The name of the venture was Time and Tonic, Inc. ("T & T"). According to Miguel, he knew nothing about the luxury watch business before he met up with the Debtor. At some point during this relationship, Babieca, apparently a company

---

[3] The Court notes that the post-Trial exhibit register uploaded by the Debtor (ECF #79) incorrectly marks exhibits 6 and 7 as admitted; they were not.

[4] To the extent any of the following findings of fact are determined to be conclusions of law, they are adopted, and shall be construed and deemed, as conclusions of law. To the extent any of the following conclusions of law are determined to be findings of fact, they are adopted, and shall be construed and deemed, as findings of fact.

owned by Miguel's father, lent T & T $10 million.  There was some kind of falling out and apparently Miguel took most, if not all (there is a dispute whether the Debtor had one watch at the time of the sale of the watches to Cohen) of T & T's inventory (the "T & T Watches") from the T & T office.

The dispute was ultimately resolved by T & T selling all the T & T Watches to a company called Cohen Anytime, controlled by Mordecai Cohen.  T & T sold to Cohen Anytime, for a total of $7.5 million, the watches that Miguel had taken, as well as the watch that either was one that the Debtor had at the time, or that was in the group Miguel had taken.[5] The $7.5 million obligation, which was represented by a promissory note signed by Cohen Anytime as payor, with Babieca as the payee, was guaranteed by Cohen individually. The Debtor, Miguel, and Babieca all signed a confidential settlement agreement with mutual releases, etc.  The Debtor did not sign any documents that would make him personally liable for the promissory note or the $7.5 million.

Apparently neither Cohen Anytime nor Cohen ever paid the $7.5 million to Babieca.  While acknowledging that the Debtor was not obligated to Babieca for the $7.5 million based on the loan documents, Babieca argues that the Debtor conspired with Cohen from the beginning to defraud Babieca, that the Debtor aided and abetted Cohen in defrauding Babieca, and that, therefore, the Debtor is jointly and severally liable with Cohen and Cohen Anytime on the $7.5 million debt.

---

[5] Not relevant to this dispute is whether the Debtor delivered one of the watches that was sold as there is no dispute that all the T & T Watches were delivered to Cohen Anytime on the day of the sale/settlement except for one watch that Miguel testified Cohen already had in Israel.

In this case, the Court finds that the value of the watches for purposes of the Claim is $7.5 million, because that is the value assigned to the T & T Watches at the time of the settlement. The Debtor argues that, since Babieca's lawyer prepared the documents, and because the Debtor did not prepare the invoice or the values put on the watches, the number on the invoice is not relevant. However, Babieca's theory of liability is based on that invoice. That invoice values the T & T Watches at $7.5 million.

Nonetheless, the Debtor proved that he was not liable for the $7.5 million as a business debt because Babieca failed to demonstrate that the Debtor was personally obligated on the debt of Cohen Anytime or Cohen with respect to the business transaction. Thus, the Debtor met his initial burden of proof to demonstrate that the Claim should not be allowed.

The burden then shifted to Babieca to demonstrate that the Debtor is liable as a co-conspirator with Cohen and Cohen Anytime for the $7.5 million Cohen Anytime apparently owes to Babieca.

Babieca argues that the fraud can be established by circumstantial evidence. The only proof that Babieca introduced regarding an alleged conspiracy between Cohen and the Debtor is the following:

a. The Debtor introduced Miguel to Mordecai Cohen. The Court will note here that in its closing argument Babieca argued that the Court can find that Miguel relied on assertions by the Debtor that Cohen Anytime would perform its obligations under its purchase of the T & T Watches but there is absolutely no evidence, testimonial or otherwise, to support such a finding. In fact, the Debtor testified without contradiction, that,

5

although he did introduce Miguel to Mordecai Cohen, Cohen reached out to the Debtor after Miguel and his father reached out to Cohen directly to buy the T & T Watches.

b. The Debtor sold a watch for Cohen Anytime that was part of the T & T Watches and, at Cohen's direction, took the $200,000 in sales proceeds from the sale of that watch and paid the money to someone named Joel Vigo. For the first time, in its closing, Babieca seems to suggest Joel Vigo is a co-conspirator. There was absolutely no evidence at Trial that would support the Court making any such finding. While Babieca makes much of the fact that the Debtor did not pay the $200,000 to Babieca, Babieca did not provide any legal or factual reason why the Debtor should have paid the money to Babieca rather than as the Debtor was directed by Cohen.

c. Babieca introduced a second invoice for two Mille watches which, first, the Debtor testified he had never seen and, second, which invoice did not describe Mille watches as other than "Mille Watches". Nonetheless, without any explanation or other evidence, Miguel testified that these two watches were two of the T & T Watches.

d. Miguel heard that the Debtor introduced Cohen to a company called "Platinum Times" which company allegedly purchased one or some of the T & T Watches from Cohen. According to Miguel, that introduction and alleged purchase could only be because the Debtor was in some scheme with Cohen to defraud Miguel or Babieca. However, even if the

Debtor did introduce Cohen to Platinum Times, that alone would not be evidence of any fraud or conspiracy.

In sum, Babieca did not present any evidence whatsoever that the Debtor was involved in any scheme with Cohen to defraud Babieca. Miguel's speculation is just that – speculation. It was Babieca's burden to show that the Debtor was obligated to Babieca under the co-conspirator argument. The minimal, speculative grounds for that claim, without any actual evidence, do not come remotely close to what is required for this Court to find liability.

Accordingly, for the foregoing reasons, it is **ORDERED** as follows:

The Objection to Claim is **SUSTAINED**.

###

Copies to:
Emmanuel Perez, Esq.
Grant S. Smith, Esq.

*Attorney Perez is directed to serve a copy of this Order on interested parties who do not receive service by CM/ECF, and file a proof of such service within two (2) business days from entry of the Order.*